IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DIVISION OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHANTAWN KING, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CASE NO. |
| HAVEN HUBBARD HOMES, INC. d/b/a HAMILTON GROVE, | ) ) ) ) |
| Defendant. | ) ) |

## COMPLAINT

Plaintiff, Chantawn, by counsel, and for her Complaint against Haven Hubbard Homes, Inc. d/b/a Hamilton Grove ("Hamilton Grove"), states and alleges the following:

### I.     NATURE OF THE ACTION

1. Plaintiff Chantawn King brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq*. and 42 U.S.C. § 1981a to remedy acts of employment discrimination and retaliation perpetrated against her by Defendant Hamilton Grove. Plaintiff contends that Hamilton Grove officials discriminated against her based on her race. Plaintiff further asserts that after Plaintiff complained of the discriminatory treatment, Hamilton Grove retaliated against her by terminating her employment on July 18, 2019.

### II.    THE PARTIES

2. Plaintiff Chantawn King, a Black female, is a citizen of the United States and a resident of the State of Indiana. At all times relevant to this suit, until her termination on July 18, 2019, she was employed with Hamilton Grove as a Certified Nursing Assistant.

3. Defendant Hamilton Grove is a non-profit retirement community organized under the laws of the State of Indiana, and located at 31869 Chicago Trail, New Carlisle Indiana 46552.

### III.     JURISDICTION AND VENUE

4.    This Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 2000e-16.

5.    Venue is proper in this judicial district under 42 U.S.C. § 2000e-5(f)(3) as Plaintiff was employed by Hamilton Grove in New Carlisle, St. Joseph County, Indiana at the time of her termination, plaintiff's employment records are maintained by Hamilton Grove in this judicial district, and decisions adverse to Plaintiff's employment that are the subject of this civil action were made in this judicial district.

6.    Plaintiff is bringing these proceedings within the time limits as identified in the Equal Employment Opportunity Commission right to sue letter, dated June 19, 2020, and received by Plaintiff on June 24, 2020.  A true and accurate copy of the aforesaid Equal Employment Opportunity Commission Right to Sue Letter is attached hereto, marked as Plaintiff's **Exhibit 1** and made a part hereof.

7.    Prior thereto Plaintiff timely initiated her Equal Employment Opportunity Commission proceedings by filing of a certain "Charge of Discrimination," as signed and filed by Plaintiff on August 2, 2019.  A true and accurate copy of Plaintiff's "Charge of Discrimination" is attached hereto, marked as Plaintiff's **Exhibit 2** and made a part hereof.

### IV.     FACTUAL STATEMENT OF THE CLAIM

8.    Hamilton Grove is a continuing care retirement community that provides healthcare services and assisted living services to approximately 270 residents and employs approximately 135 people.

9.    Of the 135 Hamilton Grove employees, there are 13 management positions.  There are also 11 Black employees, none of which are in management or supervisor positions, and 119 White employees, 13 of which occupy all the management positions.

10. Kimberly Torma, Registered Nurse, is a White female who is the Director of Nursing ("DON") and manages the nursing and health care division of Hamilton Grove.

11. The shift supervisor, Linda Brown, Licensed Practical Nurse, is a White female who directly reports to the DON and handles the day-to-day concerns of the nurses and aides who assist the residents at the nursing home.

12. On April 25, 2019, Plaintiff Chantawn King, a Black female, was hired by Hamilton Grove as a Certified Nursing Assistant (CNA), a non-supervisory position. Chantawn was considered a "rehire" after previously being employed for Hamilton Grove in 2014.

13. Chantawn was an hourly, Level 4 full-time employee, meaning she worked 36-40 hours per week, and earned a rate of $14.48 per hour.

14. Shortly after her hire date, Chantawn took on the responsibility of caring for her grandchildren; therefore, her hours were reduced and she became a Level 3 full-time employee working 30-35 hours per week.

15. Chantawn's status was changed back to a Level 4 full-employee on June 27, 2019.

16. During Chantawn's shifts, she was allowed to take two fifteen-minute breaks and one thirty-minute lunch.

17. On July 13, 2019, Chantawn and Miyata Hicks, another CNA at Hamilton Grove, took a fifteen-minute break during their work shift at approximately 9:10AM.

18. Chantawn and CNA Miyata returned from their morning break about 9:30AM.

19. When Chantawn and CNA Miyata returned from their break, Jackie Moore, a white female and a fellow CNA in a non-supervisory position, yelled that Chantawn and CNA Miyata took too long of a break so the break would have to be Chantawn's and CNA Miyata's lunch breaks.

20. CNA Jackie continued accusing Chantawn and CNA Miyata of taking a long break and turned to Supervisor Linda Brown and said, "This is the s*** that I was just talking about!"

21. In response to CNA Jackie's accusations about tardiness, Chantawn told CNA Jackie to "Shut the hell up. You take cigarette breaks all day and no one complains on you."

22. CNA Jackie told Chantawn to "Shut the f*** up," in response.

23. CNA Jackie and Chantawn continued arguing about timeliness of each other's breaks.

24. Chantawn felt CNA Jackie, who was not a supervisor, was out line in the way she addressed Chantawn and CNA Miyata immediately upon the returning from breaks that may have been about five minutes over the regular break time.

25. To end the argument, Chantawn addressed Supervisor Linda Brown, who had been knitting in the same area as the confrontation the entire time. Chantawn asked Supervisor Linda Brown why Supervisor Linda Brown allowed CNA Jackie to speak to Chantawn and CNA Miyata in such a disrespectful tone about their breaks. Chantawn further inquired why Supervisor Linda Brown allowed the disagreement among Chantawn, CNA Miyata and CNA Jackie to progress so far.

26. Supervisor Linda Brown stop knitting and approached Chantawn. Supervisor Linda Brown, pushed Chantawn and told her to go back to Chantawn's work area.

27. Chantawn told Supervisor Linda Brown to get her hand off of her. Supervisor Linda Brown stopped pushing against Chantawn and took her hand off Chantawn.

28. During the commotion while everyone was yelling, CNA called DON Kim Torma, and DON Kim Torma overheard part of the commotion from the phone.

29. Since the situation had already gotten physical with DON Linda Brown pushing Chantawn, Chantawn and CNA Miyata left the area so things would not escalate even more.

30. As Chantawn went to seek shelter in her car, Chantawn received a phone call from DON Kim Torma.

31. During this phone conversation, Chantawn told DON Kim Torma about the incident and how Supervisor Linda Brown pushed her. DON Kim Torma said she heard the confrontation

over the phone, but wanted Chantawn to continue working. Chantawn stated that she did not feel comfortable going back that day to a work environment where a supervisor would physically push another employee. Chantawn requested to speak to the Administrator David Thompson about this incident to discuss a possible resolution.

32. On Monday, July 15, 2019, Chantawn went to Hamilton Grove to speak with Administrator Dave Grove about the incident and how Supervisor Linda Brown pushed Chantawn during the confrontation. Administrator David Thompson told Chantawn he was aware of the incident that occurred on July 13, 2019.

33. Chantawn informed Administrator David Thompson that she wanted to discuss what they could do to resolve the situation because she did not feel safe or comfortable with a supervisor using physical force with her.

34. Administrator David Thompson immediately told Chantawn that Supervisor Linda Brown admitted pushing Chantawn, but he did not see the push when he reviewed the video footage of the incident. Administrator David Thompson further stated Chantawn could get a lawyer if she wanted one.

35. In response to Administrator David Thompson's comment about getting a lawyer, Chantawn asked Administrator David Thompson if he was firing Chantawn.

36. Administrator David Thompson told Chantawn he was not firing anyone, and that Chantawn could come back later that afternoon to speak to him in more detail.

37. In the afternoon of July 15, 2019, Chantawn returned to Hamilton Grove to meet with Administrator David Thompson. DON Kim Torma and Cyrina Gustafson from Human Resource accompanied Administrator David Thompson.

38. Administrator David Thompson again stated that Supervisor Linda Brown admitted to pushing Chantawn.

39. In response to Supervisor Linda Brown's admission, Chantawn asked Administrator David Thompson why Supervisor Linda Brown was still employed at Hamilton since pushing is considered assault and against Hamilton Grove's policy. Hamilton Groves' *Workplace Violence* policy states: *We have zero tolerance for all forms of violence in the workplace.*

40. Administrator David Thompson told Chantawn that he could not tell Chantawn what was going on with Supervisor Linda Brown. Administrator David Thompson further informed Chantawn the she and Supervisor Linda Brown will continue to be on administrative leave while he investigates the situation.

41. Chantawn stated that she felt management was not treating Supervisor Linda Brown and Chantawn equally in this matter. Not only had Supervisor Linda Brown been allowed to continue working over the weekend right after Chantawn made a complaint that Supervisor Linda Brown pushed her, Chantawn stated that Chantawn would have been fired immediately and stripped of her CNA license had she been accused of the same misconduct.

42. After Chantawn complained of the inequality in treatment, Administrator David Thompson agreed to pay Chantawn for the two days Supervisor Linda Brown was allowed to work after Chantawn's complaint. The meeting concluded.

43. On July 17, 2019, DON Kim Torma called Chantawn and arranged for them to meet the next morning.

44. On July 18, 2019, Chantawn went to Hamilton Grove to meet with DON Kim Torma who was accompanied by Administrator David Thompson and HR Cyrina Gustafson. Administrator David Thompson told Chantawn that she looked aggressive on the video footage of the incident.

45. Chantawn inquired why Supervisor Linda Brown had not been fired since Supervisor Linda Brown had not only looked aggressive, but was actually aggressive when she pushed Chantawn in violation of Hamilton Groves' *Workplace Violence* policy.

46. Chantawn was not given a valid explanation of the difference in treatment.

47. Instead, Administrator David Thompson told Chantawn she was fired and Chantawn needed to get a lawyer if she felt further action was needed.

48. Chantawn was the only person involved in the incident who was terminated from Hamilton Grove.

49. Supervisor Linda Brown was not terminated for pushing Chantawn during the confrontation. Supervisor Linda Brown received only a written "coaching" for allowing the argument to continue without appropriate action and for escalating the incident with inappropriate physical contact with staff. The written coaching also stated that Supervisor Linda Brown was required to attend upcoming crisis management meetings and to refrain from touching any other staff member.

50. Despite Supervisor Linda Brown, a White female supervisor, objectively engaging in actual aggressive physical contact by pushing Chantawn, Chantawn, a Black female subordinate, was the only one terminated for subjectively "appearing" aggressive.

51. Hamilton Grove treated Chantawn more unfavorably than Supervisor Linda Brown based on her race.

52. On July 13, 2019, DON Kim Torma asked Chantawn to return to work after the incident; the morning of July 15, 2019, Administrative David Thompson assured Chantawn no one was being fired even after he reviewed the video footage; and the afternoon of July 15, 2019, Chantawn made a complaint to management about Hamilton Groves' discriminatory treatment towards her stemming from this incident.

53. Three days after Chantawn complained of Hamilton Grove's discriminatory treatment against her, Hamilton Grove altered its decision and terminated Chantawn only.

## V.  COUNT I - Racial Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*

54. The foregoing paragraphs are realleged and incorporated by reference herein.

55. The Defendant's conduct as alleged at length herein constitutes discrimination based on race in violation of Title VII. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus.

56. By the conduct described above, Defendant intentionally violated the rights of Plaintiff under Title VII.

57. As a result of Defendant's intentional violation of the Title VII rights of Plaintiff, Plaintiff has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life, thereby entitling them to compensatory damages.

58. In its discriminatory actions as alleged above, Defendant has acted with malice or reckless indifference to the rights of the above-named Black female Plaintiff, thereby entitling her to an award of punitive damages.

59. To remedy the violations of Plaintiff secured by Title VII, Plaintiff requests that the Court award her the relief prayed for below.

## VI.  COUNT II - Retaliation in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq.

60. The foregoing paragraphs are realleged and incorporated by reference herein.

61. Plaintiff participated in protected activity when Plaintiff complained to Hamilton Grove's management about discriminatory treatment within her employment.

62. Plaintiff experience adverse employment action when Defendant terminated Plaintiff three days after and because Plaintiff participated in protected activity.

63. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's illegal retaliation.

64. By the conduct described above, Defendant intentionally violated the rights of Plaintiff under Title VII.

65. As a result of Defendant's intentional violation of the Title VII rights of Plaintiff, Plaintiff has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life, thereby entitling them to compensatory damages.

66. In its discriminatory actions as alleged above, Defendant has acted with malice or reckless indifference to the rights of the above-named Black female Plaintiff, thereby entitling her to an award of punitive damages.

67. To remedy the violations of Plaintiff secured by Title VII, Plaintiff requests that the Court award her the relief prayed for below.

### VII. COUNT III - Racial Discrimination in Violation of 42 U.S.C. § 1981

68. The foregoing paragraphs are realleged and incorporated by reference herein.

69. Defendant's discrimination against Plaintiff is in violation of the rights of Plaintiff afforded her by the Civil Rights Act 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

70. By the conduct described above, Defendant intentionally deprived Plaintiff, a Black female, of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges, of their contractual employment relationship with Defendant, in violation of 42 U.S.C. § 1981.

71. As a result of the Defendant's discrimination in violation of Section 1981, the Black Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling her to injunctive and equitable monetary relief; and has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendant's actions, thereby entitling her to compensatory damages.

72. In its discriminatory actions as alleged above, Defendant has acted with malice or reckless indifference to the rights of the above-named Black Plaintiff, thereby entitling her to an award of punitive damages.

73. To remedy the violations of Plaintiff secured by Section 1981, Plaintiff requests that the Court award her the relief prayed for below.

### VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff, by counsel, requests that the court award her:

(a) Compensatory damages in an amount reasonable to compensate her for damages suffered as a result of the discrimination and retaliation;

(b) A judgment for lost wages and benefits, past and future, in whatever amount she is found to be entitled;

(c) Exemplary and punitive damages in whatever amount she is found to be entitled;

(d) An award of pre- and post- judgment interest, costs and reasonable attorneys' fees incurred with this lawsuit with interest thereon; and

(e) Other damages and further relief as deemed just.

Respectfully submitted,

s/ Myra R. Reid
Peter J. Agostino | #27970-71
Myra R. Reid | #38853-71
ANDERSON, AGOSTINO & KELLER, P.C.
131 S. Taylor Street
South Bend, IN 46601
Telephone: (574) 288-1510
Facsimile: (574) 288-1650
E-mail: agostino@aaklaw.com
E-mail: reid@aaklaw.com
*Attorneys for Plaintiff*

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury.

                                                                 s/ *Myra R. Reid*
                                                                 Myra R. Reid | #35583-71